# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARINE ABBOUD<br>Dubai, United Arab Emirates[1]<br><br>    Plaintiff,<br><br>    v.<br><br>JENNIFER ANGELO YELEN<br>80 Courtright Street<br>Plains, Pennsylvania 18705,<br><br><br>    Defendants. | Civil Action No.: _____<br><br><br>**COMPLAINT AND JURY<br>DEMAND** |

Plaintiff, CARINE ABBOUD, with an address within Dubai, United Arab Emirates, by way of Complaint against the Defendant, JENNIFER ANGELO YELEN, hereby states:

## PARTIES, JURISDICTION, AND VENUE

1.     At all times relevant herein, Plaintiff, CARINE ABBOUD, is an adult resident of the United Arab Emirates.

2.     Upon information and belief, and at all times relevant herein, Defendant JENNIFER ANGELO YELEN, is an adult resident citizen of the County of Luzerne, State of Pennsylvania, with a residential address for service of process as above.

---

[1] Due to threats of continued harassment Plaintiff has received from Defendant, Plaintiff does not wish to disclose her full address.

3.      This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332, given the complete diversity of citizenship of the parties, and given that the matter in controversy exceeds the sum or value of $75,000.00

4.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as the Defendant resides in this district and the events giving rise to the claims occurred in this district.

## <u>GENERAL ALLEGATIONS</u>

5.      Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if the same were fully set forth herein.

6.      Plaintiff's husband, a non-party hereto, was involved in an extra-martial affair with Defendant, JENNIFER ANGELO YELEN (hereinafter, "Yelen" or "Defendant").

7.      Around the time of the affair between Plaintiff's husband and Defendant, Defendant became pregnant and subsequently gave birth to a baby daughter.

8.      Although Defendant asserts that the child is biologically that of Plaintiff's husband, she has refused to subject the child to a DNA test to prove same, and thus, Plaintiff's husband denies paternity.

9.      Following the birth of Defendant's daughter, Defendant began to blackmail Plaintiff's husband, threatening to disclose both the extra-marital affair and the existence of the child to Plaintiff, unless Plaintiff's husband agreed to pay large sums

of money to Defendant – money which Defendant asserted was to support the child, but which, in fact, was nothing more than extorted "hush money".

10.     Given the strain the coerced hush money payments to Defendant began to put on Plaintiff's husband's finances, Plaintiff's husband eventually came clean to Plaintiff about the affair and the child bore by the Defendant.

11.     With Plaintiff's husband having come clean to Plaintiff, and thereby having stripped Defendant of the extortionary hold she had over him, Defendant then resorted to lashing out against Plaintiff personally through a protracted online smear campaign consisting of numerous derogatory, disparaging, and defamatory, social media posts directed at Plaintiff.

12.     Plaintiff, who makes a living as a social media influencer, has been adversely impacted by Defendant's online smear campaign, with it having negatively affected both Plaintiff's mental and emotional health, as well as her online influencer business.

13.     Additionally, Plaintiff has been caused to incur additional expense in the form of attorneys' fees in connection with the instant litigation.

**Defendant's Social Media Posts**

14.     Below are some of the Defendant's derogatory, disparaging, and defamatory social media posts directed at the Plaintiff. Each social media post made by the Defendant is provided in full, annexed hereto as **EXHIBIT "A"**.

15.     While some of these posts do not identify Plaintiff by name, others do directly name Plaintiff, and thus, for anyone who regularly follows Defendant's social media posts, it would be easily discernable that Defendant is directing her attacks at Plaintiff, even when Plaintiff is not explicitly named.

### Post No. 1

> There is no excuse or tolerance for the known psychological damages to a child resulting from a father abandoning his child. There is no equivalent substitute for a child's mother or father under any circumstances. Not a step father and certainly not grandparents can fulfill the psychological needs of a child that their own biological parents provide. *And as an actual, legitimate good mother and expert on children, as opposed to a self appointed topically uneducated one that plays one on social media for (an unattained) profit*, I know all of that psychological information to be true...

> (Dated May 6, 2022. *See* **Exhibit A-1**) (Emphasis added).

16.     This post disparagingly references Plaintiff's motherhood vlog on YouTube from which Plaintiff derives an income.

### Post No. 2

> There is no way in this world I'm throwing away all of my value, education, time, and money *so some worthless woman can steal what my daughter is entitled to* from her and everything I worked for, am worth, and my potential from me...

> (Dated May 14, 2022. *See* **Exhibit A-2**) (Emphasis added).

17.     This post defames Plaintiff by accusing Plaintiff of the crime of theft, implying that Plaintiff is stealing money from Defendant's daughter by virtue of the allegation that Plaintiff's husband spends his money on Plaintiff rather than on Defendant's daughter.

Post No. 3

It's not 1955 anymore... Welcome to modern America. *The land of educated women...*

(Dated May 18, 2022. *See* **Exhibit A-3**) (Emphasis added).

18.     Like Defendant's prior posts cited above, this post implies that Plaintiff, a resident of the United Arab Emirates, is uneducated.

Post No. 4

People who constantly post their workouts on social media may be more likely to have ingrained psychological problems. They may also be more likely to be addicted to attention and esteem.

(Dated May 21, 2022. *See* **Exhibit A-4**)

19.     This post, in tandem with Defendant's comment, "LOL. You don't say!" is a reference to Plaintiff's business as a lifestyle social media influencer – a profession which often involves Plaintiff posting about her exercise routine – and is impugning Plaintiff's psychological wellbeing and character.

Post No. 5

Women don't get to be this independently successful by *allowing other women who don't or can't earn it for*

*themselves to steal it* from us. Get it for yourself and LEARN TO LIVE WITHIN THE MEANS YOU EARN FOR YOURSELF. Not from a man or a husband and certainly NOT FROM ME. Because there are beautiful women who have value both financially AND as an excellent mother too, so we don't have any sympathy for *women who syphon off of professional mothers* generating sustainable incomes or men under the guise of being a stay at home mom or school age children and we have more self respect and dignity than to act as if we're entitled to a man supporting us because of our looks and vanity... *Nobody respects an inept, gold digging fraud... And then my daughter's father went on to marry a woman who costs him more than she could ever contribute – tries to make me and my daughter compensate for her disparity between her income and her lifestyle – and cheated on her for ten years in which a child resulted.* #karma...

(Undated. *See* **Exhibit A-5**) (Emphasis added).

20. This post contains numerous character attacks and defamatory statements directed at Plaintiff. Defendant again defames Plaintiff by suggesting that Plaintiff is stealing from Defendant given that Plaintiff's husband spends his money on Plaintiff, his wife, rather than on Defendant and Defendant's daughter. To that end, Defendant accuses Plaintiff of "syphon[ing] off" of Defendant, and accuses Plaintiff of being an "inept, gold digging fraud."

21. Defendant then impugns Plaintiff's professional reputation by suggesting that she "costs [her husband] more than she could ever contribute," incorrectly implying that Plaintiff's business is unprofitable.

22.     Defendant then accuses Plaintiff, once again, of stealing from her by suggesting that, due to Plaintiff's purported inability to contribute financially in her marriage (according to Defendant), Plaintiff "tries to make [Defendant] and [Defendant's] daughter compensate for her disparity between her income and her lifestyle," suggesting incorrectly that Plaintiff lives beyond her means and is somehow financing her lifestyle by stealing from Defendant.

23.     Finally, Defendant goes so far as to publicly air Plaintiff's dirty laundry – publicly revealing the fact that Plaintiff's husband had an affair and an alleged illegitimate child behind Plaintiff's back (bearing in mind the paternity of the child is unconfirmed), and thereby subjecting Plaintiff to embarrassment and humiliation through the public revealing of such sensitive and personal information about Plaintiff's marriage.

Post No. 6

> (In the context of discussing Defendant's daughter and Plaintiff's husband): *His wife's name is Carine Abboud.* She chooses not to believe that her husband had a relationship with me for over ten years and has a daughter with me. *Please, do everyone a favor and convince this woman of the truth.*
>
> (Undated. *See* **Exhibit A-6**) (Emphasis added).

24.     In this post, Defendant directly calls out Plaintiff by name and once again reveals publicly that Plaintiff's husband had an affair and suggests again that it

resulted in an illegitimate child, despite the paternity of said child being unconfirmed, once again subjecting Plaintiff to public shame and embarrassment.

25.     Additionally, and more disturbingly, in this post Defendant makes a direct call to action to her online followers to "convince [Plaintiff] of the truth" – in other words, inciting her followers to harass Plaintiff and take other undefined action, potentially including violence, against her.

Post No. 7

> (Coupled with a meme about exaggerated facial features resulting from plastic surgery): Boy, I can't think of a more deserving way my daughter's money is being used after it's stolen from her/me!!!! [various emojis] omg it's sooooooo bad [emojis and laughter] #karma *That's what you get for stealing a little girl's child support money* and spending it on yourself instead! #Greed [emoji] #straightupuglynow...

> (Undated. *See* **Exhibit A-7**) (Emphasis added).

26.     Once again, in this post, Defendant publicly defames Plaintiff by accusing her of the crime of theft, suggesting again that she is stealing from Defendant and/or Defendant's daughter by spending her husband's money – money which Defendant clearly feels entitled to, and herein labels "child support" despite the paternity of Defendant's child being unconfirmed, and despite there being no court order impelling Plaintiff's husband to make child support payments of any kind to Defendant.

27.     Further, the post publicly denigrates and humiliates Plaintiff – the post being a comment on Plaintiff's physical appearance – and Defendant goes so far as to call Plaintiff, "straight up ugly now".

Post No. 8

> I don't want or need a man to save me or pamper and provide for me. I don't respect women that do, either. I'd rather a man that respects me because it's a man's job to respect a woman, but it's a woman's job to give him something to respect. Respect that I enjoy being *independently successful and without needing a man for that and being a phenomenal mother at the same time too. Some women are capable of both. And those are the women who get the men that don't cheat on their wives and have a secret child in another country.* I just want my daughter's father to fulfill his capabilities to take care of her... If it takes doing what I need to do to make his wife come out of the first stage of grief, denial, and realize her husband does have another daughter he needs to care for so that he is able to start to actively be a father in addition to financially supporting his daughter, so be it... *That karma is going to be on him and the rest of his family that denies her.*

(Dated August 28, 2022. *See* **Exhibit A-8**) (Emphasis added).

28.     This post contains numerous character attacks and defamatory statements directed at Plaintiff.

29.     First, the post impugns and disparages Plaintiff's business acumen and abilities as a mother. Defendant says that she is "independently successful" and a "phenomenal mother" and then contrasts those abilities to Plaintiff, implying that Plaintiff is neither independently successful, nor a good mother.

30.     Once again, Defendant subjects Plaintiff to embarrassment and public humiliation by revealing that Plaintiff's husband had an extra-marital affair, implying again that said affair resulted in a "secret child" despite the paternity of Defendant's child being unconfirmed.

31.     Even more disturbingly, Defendant's post makes a threat aimed at Plaintiff and Plaintiff's family. Specifically, Defendant states, "If it takes *doing what I need to do* to make [Plaintiff] come out of the first stage of grief, denial, and realize her husband does have another daughter... so be it. *That karma is going to be on him and the rest of his family*..." (Emphasis added).

32.     Although Defendant does not define the conduct contemplated by the statement "doing what I need to do", Defendant clearly threatens action of some undefined type against Plaintiff and her family, leading Plaintiff to be justifiably fearful for the physical and financial safety and wellbeing of her family and herself.

<u>Post No. 9</u>

33.     Regarding Post No. 9 (*See* **Exhibit A-9**), Defendant appropriates one of Plaintiff's own posts that Plaintiff posted to her own social media account, consisting of a photo of Plaintiff's young son Xavier as a newborn and a caption written by Plaintiff.

34.     Plaintiff's caption reads as follows:

> I was organizing my pictures today and came across
> Xavier's newborn photoshoot pics. I couldn't resist

posting this one [emojis]. Everytime I see new born pictures I reconsider my decision regarding a third child. Than I remember what comes with this cuteness (sleepless nights, costs ...) and poof [emoji] the idea of a number three is gone. But we never know what the future holds [emoji]...

35. In Post No. 9, Defendant shares a screen capture of Plaintiff's aforesaid post, and writes the following:

My lawyer found this post written by Alana's father's now wife stating that she doesn't want a third child and referencing to "poof" away the idea of a third child, except her husband already had a third child at the time she wrote that. Alana's father won't pay (what he should) for her because his wife announced publicly to the world that she wants the money allocated for his third child instead.

Let me be clear. There is unequivocally no woman in this world that would be jealous of a woman whose husband cheated on her for ten years and has a third child that she has no clue exists. There is no woman with dignity who would be jealous of another woman who is so obliviously dependent on a pathological liar because she is nothing but a financial liability to herself and her family. No woman with both beauty and brains is jealous of a woman with only one of the two. No intelligent, driven woman is jealous of sitting home, being worthless, having no knowledge or control over money, and of not being intellectually challenged daily...

Pay to support your second daughter because *I'm sick of fronting the money for you so you can misallocate that money to your unprofitable adult wife... How long is this charade that she doesn't cost more than she could ever make as a pretend influencer with overwhelming evidence of histrionic personality disorder and various other mental illnesses going to go on?!* How many YEARS?! Because I AM SICK OF SUFFERING AND PAYING

FOR THIS ADULT LIABILITY SO YOU DON'T HAVE TO PAY WHAT YOU SHOULD TO YOUR DAUGHTER. My DOG could get 700 likes on Instagram. Grow up and pay for your third child. She is not what you think is a mark on your ascent to success. Marrying your wife was...

(Dated May 5, 2022. *See* **Exhibit A-9**)

36.     In this post, Defendant once again publicly discloses Plaintiff's husband's affair to the world and claims entitlement to support monies for her child, despite no confirmed paternity and no such support order.

37.     Defendant again disparages Plaintiff's business as a social media influencer, calling her a "pretend influencer", remarking that her dog could get 700 likes on Instagram, and repeatedly referring to Plaintiff as a financial liability.

38.     Defendant also defames Plaintiff by publicly asserting that Plaintiff suffers from various mental illnesses.

Post No. 10

39.     Regarding Post No. 10 (*See* **Exhibit A-10**), this post is actually a direct comment from Defendant on a photograph posted by Plaintiff to Plaintiff's own social media page.

40.     The photograph posted by Plaintiff depicts Plaintiff on a beach while she was on an "influencer trip" with various other prominent social media influencers.

41.     Defendant commented on Plaintiff's photo, in relevant part, as follows:

You look as if you have absolutely no clue your husband has a 4 year old daughter in the U.S. that he has fallen behind on supporting and recently abandoned...

*I cannot tolerate anyone mistreating and neglecting a child or anyone who aids in doing so.* How hypocritical is it for you to spend a little girl's money on luxury for yourself instead causing a little girl to struggle? It is insanity to witness your husband paying for your luxury vacations and cosmetic procedures while he's not supporting his second daughter in any way. *Please get a job that finally generates a sustainable income to support yourself and your own children so I don't have to support your lifestyle instead anymore.*

And please, whatever you do, do not further humiliate yourself by believing his lies that try to cover up his affair and secret daughter...

(Undated. *See* **Exhibit A-10**)

42.    Once again, Defendant subjects Plaintiff to embarrassment and public humiliation by revealing that Plaintiff's husband had an extra-marital affair, implying again that said affair resulted in a "secret daughter" despite the paternity of Defendant's child being unconfirmed.

43.    Similarly, Defendant again defames Plaintiff by suggesting that she is somehow stealing Defendant's money – money which Defendant feels entitled to, but which is not at all hers.

44.    Finally, Defendant defames Plaintiff by accusing Plaintiff of committing a crime – aiding in the neglect or mistreatment of a child.

45.     As a result of Defendant's statements made in this specific post, itself a comment on Plaintiff's picture posted by her to her own social media account, Plaintiff was forced to withdraw early from the aforementioned influencer trip and temporarily suspend her social media accounts for fear that Defendant's comments would adversely impact her public image and online following.

46.     Overall, as a direct and proximate result of all of the aforesaid social media posts made by Defendant, and others, Plaintiff has been caused to sustain significant injuries of a professional, reputational, emotional, and psychological nature, with Plaintiff's social media influencer business having lost followers and, thereby, potential endorsement deals, and with Plaintiff herself requiring professional psychopharmacological interventions for treatment with the pervasive anxiety and emotional distress that Defendant has wrought, and continues to inflict, upon Plaintiff.

## COUNT ONE
## NEGLIGENCE *PER SE* IN VIOLATION OF 18 Pa.C.S.A. § 2709

47.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

48.     As the foregoing facts make clear, Defendant has engaged in an ongoing and systemic pattern of harassment, bullying, and libel directed at Plaintiff online.

49.     While it is true that the Commonwealth of Pennsylvania has not, as of yet, recognized a standalone cause of action in civil courts for harassment, harassment is criminalized under 18 Pa.C.S.A. § 2709.

50.     Defendant, like all Pennsylvanians, owes a duty to the public at large to abide by the laws of the Commonwealth of Pennsylvania.

51.     Defendant has breached this duty as it is owed to Plaintiff, in that Defendant has engaged in harassment directed at Plaintiff, in violation of 18 Pa.C.S.A. § 2709.

52.     Specifically, 18 Pa.C.S.A. § 2709 provides, in relevant part that:

> A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person... communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures...

53.     Defendant's social media posts as aforedescribed, and others, made to or about Plaintiff were clearly made by Defendant with the intent to harass Plaintiff.

54.     Further, these posts made by Defendant communicated lewd, lascivious, threatening, or obscene words, language, drawings, or caricatures, often in combination with one another.

55.     Given the foregoing, Defendant's conduct as aforesaid, is in clear violation of 18 Pa.C.S.A. § 2709.

56.     Plaintiff, as a member of the public, is within the class of individuals 18 Pa.C.S.A. § 2709 was intended to protect.

57.     Further, the type of harm which Defendant inflicted upon Plaintiff, as aforesaid, is among the type of harm 18 Pa.C.S.A. § 2709 was clearly intended to prevent, as the statute specifically includes communications as a mode of harassment.

58.     As a direct and proximate result of the conduct of the Defendant as aforesaid, in violation of 18 Pa.C.S.A. § 2709, Defendant has caused Plaintiff to sustain significant damages and is thus negligent *per se*.

    **WHEREFORE**, the Plaintiff, CARINE ABBOUD, demands judgment against Defendant JENNIFER ANGELO YELEN, for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## COUNT TWO
## NEGLIGENCE *PER SE* IN VIOLATION OF 18 Pa.C.S.A. § 2709.1

59.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

60.     As the foregoing facts make clear, Defendant has engaged in an ongoing and systemic pattern of stalking Plaintiff online across various social media platforms.

61.     While it is true that the Commonwealth of Pennsylvania has not, as of yet, recognized a standalone cause of action in civil courts for stalking, stalking, including online cyber stalking, is criminalized under 18 Pa.C.S.A. § 2709.1.

62.     Defendant, like all Pennsylvanians, owes a duty to the public at large to abide by the laws of the Commonwealth of Pennsylvania.

63.     Defendant has breached this duty as it is owed to Plaintiff, in that Defendant has engaged in the online cyber stalking of Plaintiff, in violation of 18 Pa.C.S.A. § 2709.1.

64.     Specifically, 18 Pa.C.S.A. § 2709.1 provides, in relevant part that:

> A person commits the crime of stalking when the person... engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

65.     Section 18 Pa.C.S.A. § 2709.1(f) expressly goes on to define "communicates" as including the act of transmitting communications via the Internet.

66.     Defendant's social media posts as aforedescribed, and others, made to or about Plaintiff by Defendant demonstrate a pattern of actions on the part of the Defendant wherein she repeatedly communicates to or about Plaintiff with the intent to either place Plaintiff in reasonable fear of bodily injury or to cause substantial emotional distress to Plaintiff.

67.     In fact, as a direct and proximate result of the Defendant's social media posts to or about Plaintiff, Plaintiff has been placed in such a reasonable fear of bodily injury by the Defendant and been caused to sustain substantial emotional distress.

68.     Given the foregoing, Defendant's conduct as aforesaid, is in clear violation of 18 Pa.C.S.A. § 2709.1.

69.     Plaintiff, as a member of the public, is within the class of individuals 18 Pa.C.S.A. § 2709.1 was intended to protect.

70.     Further, the type of harm which Defendant inflicted upon Plaintiff, as aforesaid, is among the type of harm 18 Pa.C.S.A. § 2709.1 was clearly intended to prevent, as the statute specifically includes Internet communications as a mode of stalking.

71.     As a direct and proximate result of the conduct of the Defendant as aforesaid, in violation of 18 Pa.C.S.A. § 2709.1, Defendant has caused Plaintiff to sustain significant damages and is thus negligent *per se*.

**WHEREFORE**, the Plaintiff, CARINE ABBOUD, demands judgment against Defendant JENNIFER ANGELO YELEN, for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## COUNT THREE
## DEFAMATION/LIBEL *PER SE*

72.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

73.     Defendant, through her aforecited social media posts, has repeatedly defamed and/or libeled Plaintiff.

74.     All of the aforecited social media posts, and others, made by Defendant about Plaintiff are defamatory in nature in that they serve, unjustly, to impugn Plaintiff's character, with falsehoods, accusations, and other salacious indictments of such things as Plaintiff's moral judgment, business acumen, intelligence, physical appearance, respect for the law, and her roles as wife and mother.

75.     Defendant knowingly, willfully, and maliciously published these defamatory statements to countless third-parties by posting them online to various social media platforms.

76.     All of the aforecited social media posts, and others, made by Defendant, refer and/or apply to Plaintiff, whether directly or indirectly, and Defendant sought to ensure that the posts would be viewed by Plaintiff's family, friends, and/or business contacts, by often "following" or "tagging" these individuals on said posts.

77.     The application of these posts to the Plaintiff is therefore apparent to any third-party receiver of these published communications familiar with both Plaintiff and Defendant, as Defendant has openly named Plaintiff and her husband in her

social media posts, and where she does not name Plaintiff directly, she will often refer to her as her daughter's "father's now wife". *See*, for example, **Ex. A-9**.

78.     The understanding of third-party recipients of these published communications by Defendant as to their defamatory nature is apparent to any third-party familiar with Plaintiff, such as Plaintiff's online followers, for example.

79.     What's more, many of Defendant's posts are libelous per se in that they are words imputing criminal offenses upon Plaintiff; for example, Defendant repeatedly accuses Plaintiff of theft, in violation of Title 18, Chapter 39 of the Pennsylvania Consolidated Statutes, (*see*, for example **Exs. A-2, A-5, A-7, & A-10**), and further, Defendant accuses Plaintiff of endangering the welfare of a child in violation of 18 Pa.C.S.A. § 4304, (*see*, **Ex. A-10**).\

80.     In sum, Defendant's libelous posts  tend to expose a Plaintiff to contempt, ridicule, hatred or degradation of character, and some even go so far as to accuse Plaintiff of criminal conduct or of suffering from loathsome mental illnesses.

81.     As such, Defendant has *per se* defamed and/or libeled Plaintiff, causing Plaintiff to sustain significant damages.

**WHEREFORE**, the Plaintiff, CARINE ABBOUD, demands judgment against Defendant JENNIFER ANGELO YELEN, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## COUNT FOUR
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

82.　　Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

83.　　Plaintiff is a social media influencer with a significant online presence and following.

84.　　Plaintiff derives an income from her online social media influencer business, predominately through YouTube ad revenue and product endorsements.

85.　　The economic success of Plaintiff's business as a social media influencer is directly correlated to the number of followers Plaintiff has online – in other words, the size of Plaintiff's active audience (such things as friends, followers, and viewers).

86.　　Due to Plaintiff's sizeable online presence as a social media influencer, Plaintiff is subject to prospective contractual relations with advertisers in the form of product endorsement deals.

87.　　Defendant, through her social media posts to, or about, Plaintiff, as aforecited, has purposefully, intentionally, and maliciously attempted to harm Plaintiff's existing or prospective contractual relations with advertisers interested in marketing their products through Plaintiff's online presence by damaging Plaintiff's public image such that her audience diminishes and advertisers are less inclined to engage Plaintiff for product endorsements.

88.     There exists no privilege or justification upon which Defendant may so interfere with Plaintiff's contractual relations.

89.     As a direct and proximate result of Defendant's tortious interference with Plaintiff's contractual relations with her existing or prospective advertisers, Plaintiff has sustained damages of both an actual and prospective nature.

        **WHEREFORE**, the Plaintiff, CARINE ABBOUD, demands judgment against Defendant JENNIFER ANGELO YELEN, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## COUNT FIVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

90.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

91.     As aforesaid, Defendant has engaged in an ongoing and systemic pattern of libelous online harassment directed at Plaintiff, designed to harm her emotionally, psychologically, and professionally.

92.     Unfortunately for Plaintiff, Defendant has succeeded in those aims.

93.     Defendant's repeated and vicious attacks of Plaintiff online in her social media posts as aforecited, constitute extreme and outrageous conduct which is so outrageous in character and so extreme in degree as to go beyond all possible bounds

of decency, and are to be regarded as atrocious, and utterly intolerable in civilized society.

94.     This is evidenced not only by their intensity and their frequency, but also by the deeply personal nature of the content of many of these attacks, publicly disclosing such things as infidelity in Plaintiff's marriage.

95.     The extreme and outrageous nature of Defendant's conduct is also evidenced by the significant emotional distress this conduct has caused to Plaintiff.

96.     Plaintiff has suffered such severe emotional distress as a direct and proximate result of Defendant's conduct so as to warrant professional psychopharmacological intervention and therapy.

97.     At all times, the conduct of the Defendant as aforesaid, was intentional, and was specifically intended to cause Plaintiff to suffer such severe emotional distress.

98.     Therefore, Plaintiff has intentionally inflicted severe emotional distress upon Plaintiff, causing Plaintiff significant emotional, psychological, and financial damages.

**WHEREFORE**, the Plaintiff, CARINE ABBOUD, demands judgment against Defendant JENNIFER ANGELO YELEN, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule

38(b) of the Federal Rules of Civil Procedure.


Dated: <u>December 14, 2022</u>      LENTO LAW GROUP, P.C.

CHRISTIAN COLON, ESQUIRE
ATTORNEY ID: 329357
1650 Market Street, Suite 3600
Philadelphia, PA 19103
T: (267) 833-0200 | F: (267) 833-0300
ccolon@lentolawgroup.com
*Attorney for Plaintiff, Carine Abboud*